■ In the Matter of the Claim of AIDA CIPRIAN, Respondent, v BARBIZON HOTEL et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [760 NYS2d 261] —Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed September 12, 2001, which found that claimant has a marked permanent partial disability.

Claimant, a hotel housekeeper, sustained a work-related back injury on May 4, 1996 when a stack of towels and a towel rack fell on her. At issue on appeal is the determination of the Workers' Compensation Board that claimant has a marked permanent partial disability causally related to this injury.

acts of inappropriate sexual contact with an 11-year-old girl. The plea was entered into by defendant with the understanding that the recommended sentence would be concurrent 20-year prison terms. Sentenced accordingly, defendant now appeals.

We are unpersuaded by defendant's claim that County Court erred in denying a motion to suppress his written statement to police on the ground that the police lacked probable cause to arrest him. At the *Huntley* hearing, it was established that the younger of defendant's two victims (*see* n 1, *supra*) gave an oral statement to State Police Investigator Mary DeSantis on the evening of December 2, 2001 detailing acts of sexual contact between herself and defendant during the previous 24-hour period. In addition to interviewing the victim at this time, DeSantis also interviewed her aunt, to whom the sexual activity had been disclosed, and her mother.

Shortly after interviewing the victim, DeSantis discussed the matter with her superior, State Police Senior Investigator Thomas Aiken, who proceeded to the home of defendant's brother to question defendant.[2] While en route, Aiken was advised that defendant had just left the residence and was traveling in a specific direction on a specific roadway. At Aiken's direction, another state trooper followed defendant a short distance and then proceeded to pull him over by activating his emergency lights. Aiken arrived within seconds, informed defendant that he "had some serious things" to talk to him about and inquired if defendant would be willing to accompany him to his "office." Defendant agreed, accompanied Aiken to a nearby State Police barracks and, thereafter, upon waiving *Miranda* rights, gave a detailed, written statement confessing to many instances of sexual contact with the victims.

The trooper who pulled defendant over was justified in doing so even though defendant had not been observed committing any Vehicle and Traffic Law violation, as the accusations leveled against him by the youngest victim most assuredly supplied the police with probable cause to arrest (*see People v Berzups*, 49 NY2d 417, 427 [1980]; *People v Leath*, 273 AD2d 410, 411 [2000], *lv denied* 95 NY2d 891 [2000]; *People v Green*, 154

old at the time of the alleged offense. Witness statements in the record conflict as to her age, and her date of birth is not recited in any document in the record. Even the parties contradict each other on this point in their respective briefs.

**2.** Aiken knew that defendant was likely to be present at his brother's home because State Trooper Todd McPhail, at Aiken's direction, had located defendant's vehicle there and was surveilling it.

AD2d 548 [1989], *lv denied* 74 NY2d 948 [1989]; *see also People v Robinson*, 97 NY2d 341 [2001]; *People v Bigelow*, 66 NY2d 417, 422 [1985]). That the police may have delayed in obtaining an arrest warrant so as to question defendant in the absence of counsel does not mandate suppression of his statement (*see People v Anderson*, 290 AD2d 658, 658-659 [2002], *lv denied* 97 NY2d 750 [2002]; *People v Wheeler*, 227 AD2d 980 [1996], *lv denied* 88 NY2d 1025 [1996]; *People v Counts*, 214 AD2d 897 [1995], *lvs denied* 86 NY2d 792, 800 [1995]). Finally, the *Huntley* hearing testimony confirms that defendant voluntarily accompanied Aiken to the barracks, that he was not physically restrained at any time and that he knowingly waived his *Miranda* rights and agreed to speak with Aiken in the absence of counsel. In a nonconfrontational setting, defendant readily admitted to the younger victim's allegations of sexual contact and also sua sponte offered up his inappropriate conduct with the older victim. Under these circumstances, we are unpersuaded by the claim that this statement was taken in violation of any constitutional rights (*see People v Johnston*, 273 AD2d 514, 515 [2000], *lv denied* 95 NY2d 935 [2000]; *People v Caviano*, 194 AD2d 429, 430 [1993], *lvs denied* 82 NY2d 892 [1993], 83 NY2d 803 [1994]).

Only one of defendant's remaining contentions merits comment, namely his claim that the sentence is harsh and excessive. Although defendant points to the fact that he has no prior criminal record, he has demonstrated genuine remorse for his actions and he has been deemed a suitable candidate for treatment, we ultimately reject these arguments for two compelling reasons. First, defendant entered into the subject plea fully aware that the recommended sentence was indeed the maximum on each count. Moreover, although defendant makes repeated references to his past "success" at self regulating his pedophiliac tendencies, we note that he engaged in "hundreds" of acts of sexual contact with one of his victims for several years, hardly the conduct of a successful self regulator. We are particularly unimpressed with defendant's reliance on *People v Peters* (277 AD2d 512 [2000]) as support for a reduction of the sentence, a case concerning neither the seriousness of the instant charges nor deplorable conduct toward young victims.

Cardona, P.J., Mercure, Crew III and Rose, JJ., concur. Ordered that the judgment is affirmed.

The employer and its workers' compensation carrier argue that the Board's decision is not supported by substantial evidence inasmuch as it rests on the allegedly speculative opinions of claimant's medical experts, and further that the Board substituted its judgment for that of the medical experts when it concluded, in the absence of medical testimony, that claimant is permanently disabled. We disagree.

The Board based its determination on the testimony of claimant's treating orthopedist and chiropractor who opined that claimant has a marked partial disability, as well as the reports of claimant's neurologist indicating that claimant's disability is permanent. Although the carrier's medical expert opined that claimant is no longer disabled as a result of the 1996 injury, the Board is empowered to resolve conflicts in the medical testimony, and its resolution must be accorded deference (*see Matter of Kramer v Ultra Blend Corp.*, 297 AD2d 890 [2002], *lv denied* 99 NY2d 506 [2003]; *Matter of Estate of Matusko v Kennedy Valve Mfg. Co.*, 296 AD2d 726, 728 [2002], *lv denied* 99 NY2d 504 [2003] [2002]). Accordingly, substantial evidence supports the Board's determination that claimant has a marked permanent partial disability.

Cardona, P.J., Mercure, Peters and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.